UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REGIS VORVA,

       Plaintiff,

v.                                           Case No. 1:20-cv-939
                                           Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant,

_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied his application for disability insurance benefits (DIB).

On April 7, 2018, plaintiff filed an application for DIB, alleging a disability onset date of March 21, 2017. PageID.90. Plaintiff identified his disabling conditions as: diabetes mellitus type II; hypertension; right knee medial meniscus tear; left groin abscess and cellulitis; bilateral carpal tunnel syndrome; arteriosclerotic cardiovascular disease; coronary artery disease (CAD); peripheral neuropathy; and gastroesophageal reflux disease (GERD). PageID.309. Prior to applying for DIB, plaintiff completed the 12th grade and had past relevant work as a manager (tire service), tire technician, and machine setter. PageID.103-104. An administrative law judge (ALJ) reviewed plaintiff's application de novo and entered a written decision denying benefits on October 2, 2019. PageID.90-106. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

1

## I.      LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016).  This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019).  "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole.  *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only.  This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence.  *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).  "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.     ALJ's DECISION

Plaintiff's application for DIB failed at the fifth step of the evaluation.  At the first step, the ALJ found that plaintiff met the insured requirements of the Social Security Act through March 31, 2019, and did not engage in substantial gainful activity from his alleged onset date of March 21, 2017, through his date last insured.  PageID.92.  At the second step, the ALJ found that through the date last insured, plaintiff had the following severe impairments: CAD; diabetes mellitus with peripheral neuropathy; major depressive disorder; and generalized anxiety disorder. *Id*.  At the third step, the ALJ found that through the date last insured, plaintiff did not have an impairment or combination of impairments that meet or equal the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  PageID.93.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he can never climb ladders, ropes, or scaffolds, and can perform other postural movements occasionally. He can perform simple, routine, repetitive work in a low stress environment, which is defined as having only occasional changes in work setting and requiring no more than occasional decision-making.

PageID.95.  The ALJ also found that through the date last insured, plaintiff was unable to perform any past relevant work.  PageID.103.

At the fifth step, the ALJ found that through the date last insured, plaintiff could perform a significant number of unskilled jobs at the sedentary exertional level.  PageID.104-105.  Specifically, the ALJ found that plaintiff could perform the requirements of occupations in the national economy such as assembler (DOT Code 729.687.010) (200,000 jobs), bench assembler (DOT Code 715.684-026) (200,000 jobs), and assembler (DOT Code 574.685-010) (85,000 jobs).  PageID.105.  Accordingly, the ALJ determined that plaintiff has not been under a disability, as

defined in the Social Security Act, from March 21, 2017 (the alleged onset date) through March 31, 2019 (the date last insured).  PageID.105-106.

### III.   DISCUSSION

Plaintiff has raised two related errors on appeal.

**A.     New and material evidence authorizes a remand for a new hearing to consider all of the relevant evidence.**

**B.     The decision lacks substantial evidence to reject the opinions of Dr. Brooks.**

Plaintiff contends that the ALJ's decision is deficient because the administrative record does not contain all of the evidence which he submitted to the agency from treating psychologist, William Brooks, Ed.D.  Now, plaintiff wants to correct the record by adding the omitted evidence to the administrative record and having the ALJ consider the claim on a complete record.  The Court construes plaintiff's appeal as requesting a sentence-six remand.

When a plaintiff submits evidence that has not been presented to the ALJ, the Court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g).  *See Sizemore v. Secretary of Health and Human Services*, 865 F.2d 709, 711 (6th Cir.1988). Under sentence-six, "[t]he court  .  .  .  may at any time order the additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding  .  .  . "  42 U.S.C. § 405(g). In a sentence-six remand, the court does not rule in any way on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision.  *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). "Rather, the court remands because new evidence has come to

light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Id.*

"The party seeking a remand bears the burden of showing that these two requirements are met." *Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006). "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). In order for a claimant to satisfy the burden of proof as to materiality, "he must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711.

As an initial matter, plaintiff is responsible for providing the evidence to support his claim:

> In general, you have to prove to us that you are blind or disabled. You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled (*see* § 404.1513). This duty is ongoing and requires you to disclose any additional related evidence about which you become aware.

20 C.F.R. § 404.1512(a)(1).

Plaintiff submitted evidence to the agency related to his treatment by Dr. Brooks. However, some of that evidence was not placed in the administrative record. As plaintiff explained,

> Mr. Vorva submitted seventeen pages of records from his treating psychologist [Dr. Brooks]. Attached as Exhibit A is the facsimile confirmation sheet showing 17 of 17 pages were successfully sent on August 29, 2019, at 5:16 p.m. An additional eight pages were submitted because four of the original seventeen pages were the first page of office notes that were printed front and back. Attached as Exhibit B is the facsimile confirmation sheet showing that 9 pages (including the fax cover sheet) were successfully sent on August 29, 2019, at 5:23 p.m.

6

> Only some of these records made it into the exhibit file as Exhibit 8F. (PageID.634- 644). The ones that made it into the file include the first three office notes of 2018 dated October 23, November 6, and November 29. (PageID.634-639). The other records that made it in were a client registration form (PageID.640), the scoresheet from the MMPI testing (PageID.641), a list of medications (PageID.642), a duplicate of the first page of the October 23 office note (PageID.643), and a mental status examination report completed by Dr. Brooks on November 6, 2018 (PageID.644). . . .

> Mr. Vorva submitted additional office notes of his treating psychologist covering nine visits from December 20, 2018, through May 28, 2019. (PageID.156-166). But those records did not appear in the exhibit file at his hearing. A basic requirement of the disability process for the SSA is, "We will consider all evidence in your case record when we make a determination or decision whether you are disabled." 20 CFR §404.1520(a)(3). That did not happen.

Plaintiff's Brief (ECF No. 18, PageID.838-839).

In addition, five pages of Dr. Brooks' recorded statement (Exh. 16F) are missing

from the administrative record:

> Counsel for Mr. Vorva also took a recorded statement from Dr. Brooks on September 8, 2019. (PageID.786-819). Again, pages are missing, as the transcript begins at page 6 with the fax pagination indicating that page 6 of the transcript was page 7 of a 40-page facsimile. (PageID.786).

*Id*. at PageID.831.

In denying plaintiff's claim, the ALJ found that Dr. Brooks' opinions were not

persuasive, in part, because the supporting treatment notes were missing from the record:

> In July 2019, Dr. Brooks provided a medical assessment regarding the claimant's ability to do mental work related activities (Ex. 9F). Dr. Brooks found the claimant had moderate limitations in maintaining personal appearance. He found the claimant had marked limitations in his ability to deal with the public, use judgement, understand/remember/carry out simple or detailed job instructions, and demonstrate reliability. He found the claimant had extreme limitations in his abilities to follow work rules, relate to coworkers, interact with supervisors, deal with work stresses, maintain attention and concentration, understand / remember / carry out complex job instructions, behave in an emotionally stable manner, and relate predictably in social situations. Dr. Brooks found the claimant had extreme limitations in restrictions of activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. Finally, Dr.

7

Brooks found the claimant had 4 or more episodes of decompensation each of extended duration.

Dr. Brooks also provided a sworn statement in September 2019 (Ex. 16F). At that time, Dr. Brooks stated he has had approximately 23 sessions with the claimant. He stated he was treating the claimant for severe depression without psychotic features and anxiety with panic states from time to time. Dr. Brooks stated the claimant experienced diminished interest in almost all activities, depressed mood, sleep disturbance, some observable psychomotor agitation in the form of unstable mood, decreased energy, feelings of guilt or worthlessness, difficulty with concentration or thinking, thought of death or suicide, restlessness, fatigue, and irritability. He stated the claimant had marked limitation in understanding and remembering, extreme limitation in interacting with others, extreme limitation in his ability to concentrate, and an extreme limitation in his ability to manage himself and adapt. Dr. Brooks affirmed the claimant had limitation in understanding and learning terms, instructions and procedures, and following one to two-step oral instructions to carry out a task due to his high anxiety with panic and obsessive-compulsive symptoms. Dr. Brooks indicated the claimant had limitation in describing work activity to someone else, asking and answering questions and providing explanations, recognizing a mistake and correcting it, identifying and solving problems, sequencing multi-step activities, and using reasonable judgment to make work-related decision. Dr. Brooks affirmed the claimant had limitation in cooperating with others, asking for help when needed, handling conflicts with others, stating his own point of view, and initiating or sustaining conversation, understanding and responding to social cues whether they are physical, verbal, or emotional. Dr. Brooks affirmed the claimant had limitation in responding to questions, suggestions, criticism, and challenges. Dr. Brooks affirmed the claimant had limitation in keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness. Dr. Brooks affirmed the claimant had limitation in initiating and performing a tasks, working at an appropriate and consistent pace, completing tasks in a timely manner, ignoring or avoiding distractions while working, changing activities or work settings without being disruptive, working close to others without interrupting or distracting them, sustaining an ordinary routine and regular attendance at work, or working a full day without needing more than the allotted number or length of rest periods during the day. Dr. Brooks affirmed the claimant had limitation in responding to demands, adapting to changes, managing his psychologically based symptoms, distinguishing between acceptable and unacceptable work performance, setting realistic goals, making plans independently of others, or being aware of normal hazards and taking appropriate precautions. Dr. Brooks stated the claimant would be unable to perform a simple job, simple task on a sustained basis due to his low energy level. Dr. Brooks stated his findings were based on material he collected within his clinical interviews, his psychological testing, and other material he was able to review.

The undersigned does not find either of Dr. Brooks's opinions persuasive as the marked and extreme limitations are neither supported by Dr. Brooks's own

treatment records nor consistent with the evidence as a whole. As noted previously, while Dr. Brooks reported the claimant participated in approximately 23 sessions beginning in October 2018, the record does not reflect a majority of those appointments. Those that are reflected are handwritten and difficult to read (Ex. 8F; 16F pg. 2). The record reflects appointments with Dr. Brooks in October and November 2018. During one appointment, it was noted the claimant was not spontaneous within normal limits, had thoughts that did not seem adequately organized, had inappropriate affect, and displayed limited judgment. However, the remainder of the examination was unremarkable (Ex. 8F pg. 11). The remainder of the record largely reflects unremarkable mental status examinations performed by a majority of different providers (Ex. 2F pg. 25; 4F pgs. 6, 8, 21, 33; 8F pg. 11; 10F pg. 12; 11F pgs. 5, 9-11, 18, 22, 24; 12F pgs. 1, 5-6, 10-11, 15-16, 20-22). For example, during the consultative examination with Dr. Simpson, the claimant was noted to be cooperative with normal conversation. There was no indication the claimant displayed inappropriate behavior or that he had difficulty participating in the examination (Ex. 5F pg. 2). The remainder of records give no indication the claimant displayed any sort of behavioral issues. In fact, the claimant's behavior was consistently noted to be within normal limits. In addition, the claimant consistently denied to non-mental health related providers that he was tense, fearful, suicidal or experiencing any anxiety or depression (Ex. 2F pg. 25; 4F pgs. 6, 8, 21, 33; 8F pg. 11; 10F pg. 12; 11F pgs. 5, 9-11, 18, 22, 24; 12F pgs. 1, 5-6, 10-11, 15-16, 20-22). The record reflects no emergent or inpatient crisis care.  The opinion is inconsistent with the claimant's own reported abilities and allegations of symptoms (Ex. 5E). In addition, Dr. Brooks based part of his opinion on the old legal B criteria. Overall, the record provides no support for marked and extreme limitations in almost all areas of mental functioning, as reported by Dr. Brooks. Therefore, the undersigned does not find his opinions persuasive.

PageID.102-103.

Plaintiff contends that this is an appropriate case for a sentence-six remand:

The missing nine office notes and the missing five pages of the recorded statement were not in the exhibit file. They qualify as new. They are relevant, because the Decision rejected the claim due to the omitted records, which support the opinions of Dr. Brooks. And good cause exists for not having the records in the file. Mr. Vorva successfully submitted them, but somehow the SSA failed to incorporate them into the claim file. Exhibit 8F is a mishmash of some of the records. But the full submissions are missing, despite assurance by the ALJ and hearing monitor that a full, fresh, new copy would be placed in the file.

Plaintiff's Brief at PageID.840-841.

A sentence-six remand is appropriate in this case.  Plaintiff has shown good cause

for failing to include the new evidence in the administrative record.  Specifically, plaintiff sent Dr.

Brooks' records to the agency, but only some of those records were placed in the administrative record. In addition, plaintiff has shown that the evidence is material.  Plaintiff cited the general rule that the agency will consider "all evidence in your case record" in evaluating a disability claim.  That did not occur in this case.   In addition, as plaintiff observes, the ALJ's decision "holds it against Mr. Vorva that these records were omitted."  Plaintiff's Brief at PageID.839.  Dr. Brooks opined that plaintiff had a number of serious impairments.  PageID.102-103, 645-650, 786-819. In his recorded statement, which is missing the first five pages, Dr. Brooks opined that plaintiff met the requirements of Listings 12.04 (depressive, bipolar and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders).  PageID.796-804.  Dr. Brooks' opinions are based upon plaintiff's condition as reflected in the treatment notes.  Notably, the ALJ found that Dr. Brooks' opinions were not persuasive, in part, due to these missing treatment notes, stating that "the record does not reflect a majority of [plaintiff's] appointments." PageID.103.[1]  To quote plaintiff, "[i]t is unfairly prejudicial to criticize the absence of records when those records were successfully submitted by Mr. Vorva, but the SSA misplaced them."  Plaintiff's Brief at PageID.840.  In summary, plaintiff should not be denied benefits because records which he submitted to the agency were not placed in the administrative record and not reviewed by the ALJ.

For all of these reasons, this matter should be remanded pursuant to sentence six of 42 U.S.C. § 405g.  On remand, the Commissioner should assemble all of Dr. Brooks' records sent to the agency and then re-evaluate the doctor's opinions based on a complete set of those records.

---

[1] As discussed, the ALJ also found that Dr. Brooks' treatment records which reflect sessions "are handwritten and difficult to read."  PageID.103.  In the Court's experience, nearly all handwritten medical records which appear in Social Security administrative transcripts are "difficult to read."  However, the Commissioner should not discount or disregard a medical provider's handwritten treatment notes.  *See, e.g., Howard v. Commissioner of Social Security*, 276 F.3d 235, 241-42 (6th Cir. 2002) (ALJ improperly dismissed treatment notes because  "they 'consist[ ] mostly of handwritten gobblegook  notes from the doctor' that have 'no probative value in this case.' ").

IV.    CONCLUSION

Accordingly, the Commissioner's decision will be **REMANDED** pursuant to sentence six of 42 U.S.C. § 405(g).  On remand, the Commissioner is directed to assemble all of Dr. Brooks' records and then re-evaluate the doctor's opinions based on a complete set of those records.  An order consistent with this opinion will be issued forthwith.


Dated:  March 15, 2022                          /s/ Ray Kent
                                                United States Magistrate Judge